IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DANIEL STRICKLAND,<br>AIS #201890,<br><br>    PETITIONER,<br><br>VS.<br><br>WARDEN BOYD, et al.,<br><br>    RESPONDENTS. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO.<br>) 2:07-CV-979-MEF<br>)<br>)<br>) |

**RESPONDENTS' ANSWER TO COURT'S
ORDER TO SHOW CAUSE**

Come now Respondents, by and through the Attorney General of the State of Alabama, and file their response to this Court's Order to Show Cause dated November 6, 2007, giving the Respondents 20 days in which to file a response to the Petition for Writ of Habeas Corpus filed by the Petitioner, Daniel Strickland. In response, Respondents file the following answer, memorandum, and brief.

**PROCEDURAL HISTORY**

1. On October 5, 1998, Strickland was convicted by a jury of three counts each of first degree rape, first degree sodomy, and first degree sexual abuse. Petition, p. 2; State's Exhibit A, p. 1. He was sentenced to concurrent 25 year

sentences for his first degree rape convictions, concurrent 10-year sentences for his first degree sodomy convictions, and concurrent 3-year sentences for his first degree sexual abuse convictions. Id. The Alabama Court of Criminal Appeals affirmed Strickland's convictions in an unpublished memorandum issued on July 9, 1999, and the Alabama Supreme Court denied his petition for writ of certiorari and issued its certificate of judgment on October 22, 1999. State's Exhibits B,C, and D.

    2.    Strickland filed a motion to vacate, set aside, or amend his sentence on June 14, 2006. State's Exhibit A, pp. 1-3, n. 1. The trial court denied this motion on July 24, 2006, and the Court of Criminal Appeals issued an unpublished memorandum on October 27, 2005, affirming this denial of the motion. Id.

### STRICKLAND'S FEDERAL HABEAS CLAIMS

3. On October 31, 2007, Strickland filed a writ of habeas corpus petition appearing to raise claims of double jeopardy, sufficiency of the evidence, coaching of the victim, and unlawful arrest. Petition, p. 5.

4. On November 6, 2007, this Court entered an order requiring, within 20 days, Respondents to show cause why Strickland's habeas corpus petition should not be granted.

# ANSWER TO THE PETITION

6. Strickland's federal habeas corpus petition is untimely under the one-year statute of limitation provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

7. Respondents admit Strickland is presently incarcerated in a state facility, but deny he is in custody in violation of the laws or constitution of the United States. Strickland's conviction and sentence were validly and constitutionally obtained.

# MEMORANDUM BRIEF IN SUPPORT OF ANSWER

8. Strickland's petition is barred by the one-year statute of limitation set out by the AEDPA. According to 28 U.S.C.A. § 2244(d):

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been

newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Because the Alabama Supreme Court issued its certificate of judgment for Strickland's direct appeal on October 22, 1999, he had 90 days in which to petition for writ of certiorari with the United States Supreme Court. Accordingly, he had one year from January 20, 2000 in which to file a federal habeas petition or to toll such time by filing a state post-conviction petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. The AEDPA one-year limitation period in which Strickland could file a federal habeas petition expired on January 20, 2001. Therefore, his federal habeas petition, filed on June 6, 2007, was untimely under 28 U.S.C.A. § 2244(d).

## CONCLUSION

Based upon the foregoing authorities and facts, Strickland's federal habeas corpus petition should be dismissed with prejudice.

Respectfully submitted,

Troy King (KIN047)
Attorney General
By:


s/John M. Porter
John M. Porter (ASB5818-P77J)
Assistant Attorney General

5

## EXHIBITS

Exhibit A   - Court of Criminal Appeals decision in <u>Strickland v. State</u>, CR-05-2197 (Ala. Crim. App. October 27, 2006)(unpublished memorandum).

Exhibit B   - Court of Criminal Appeals decision in <u>Strickland v. State</u>, CR-98-1213 (Ala. Crim. App. July 9, 1999)(unpublished memorandum).

Exhibit C   - Court of Criminal Appeals's denial of rehearing in <u>Strickland v. State</u>, CR-98-1213 (Ala. Crim. App. 1999).

Exhibit D   - Supreme Court of Alabama's denial of certiorari in Strickland v. State, S.Ct. No. 1981985 (Ala. 1999).

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed by United States Postal Service the document (including all exhibits) to the following non-CM/ECF participants: <u>Daniel Strickland, AIS # 201890, Easterling Correctional Facility, 200 Wallace Drive Clio, AL 36017.</u>

                                              Respectfully submitted,

                                              s/John M. Porter
                                              John M. Porter(ASB5818-P77J)
                                              Office of the Attorney General
                                              Alabama State House
                                              11 South Union
                                              Montgomery, AL  36130-0152
                                              Telephone:  (334) 242-7300
                                              Fax:  (334) 242-2848
                                              E-Mail:  JPorter@ago.state.al.us

345182115125-001

Rel 10/27/2006 Strickland
Notice: This unpublished memorandum should not be cited as precedent.  See Rule 54, Ala.R.App.P.  Rule 54(d),
states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or
briefs and shall not be used by any court within this state, except for the purpose of establishing the application
of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals
State of Alabama
Judicial Building, 300 Dexter Avenue
P. O. Box 301555
Montgomery, AL 36130-1555

| | |
|---|---|
| H.W."BUCKY" McMILLAN<br>Presiding Judge<br>SUE BELL COBB<br>PAMELA W. BASCHAB<br>GREG SHAW<br>A. KELLI WISE<br>Judges | Lane W. Mann<br>Clerk<br>Gerri Robinson<br>Assistant Clerk<br>(334) 242-4590<br>Fax (334) 242-4689 |

<u>MEMORANDUM</u>

CR-05-2197                          Elmore Circuit Court CC-98-262

<u>Daniel Strickland v. State</u>

COBB, Judge.

  Daniel Strickland appeals from the trial court's denial of his motion to vacate, set aside or amend his 1998 sentence.

  On October 5, 1998, following the return of a nine-count indictment, Daniel Strickland was convicted in counts one through three of first-degree rape, in counts four through six of first-degree sodomy, and in counts seven through nine of first-degree sexual abuse. On November 20, 1998, he received concurrent 25-year sentences for counts one through three, his rape convictions; concurrent 10-year sentences for counts four through six, his sodomy convictions; and concurrent 3-year sentences for counts seven through nine, his sexual abuse

1


STATE'S EXHIBIT A

convictions. Counts four through six were to run consecutively to counts one through three, and counts seven through nine were to run consecutively to counts one through six.

Strickland appeals from the circuit court's denial of his June 14, 2006, motion to vacate, set aside, or amend sentences. Strickland's motion is almost unintelligible. As best we can tell, Strickland states that he is entitled to be resentenced pursuant to § 15-22-50, Ala. Code 1975, and "Rule 14.3, Ala. Code 1975." Section 15-22-50, Ala. Code 1975, provides for the suspension of sentence and placement on probation. The is no Alabama statute "14.3" and Rule 14.3, Ala. R. Crim. P., is irrelevant because it concerns guilty plea agreements. Strickland appears to make an extremely vague equal protection challenge in which he claims, as best we can discern, that thousands of prisoners have been resentenced pursuant to § 13A-5-9.1, Ala. Code 1975, and thus, equal protection requires that he also be resentenced. He also appears to allege that the sentencing guidelines were not followed in imposing his sentence.

On July 24, 2006, the trial court denied the motion.[1] On appeal from this ruling, Strickland argues that his motion was a § 13A-5-9.1, Ala. Code 1975, motion to reconsider his sentence, see <u>Kirby v. State</u>, 899 So. 2d 968 (Ala. 2004), and that the trial court's summary denial was reversible error. He also reasserts that sentencing guidelines were not followed.

Strickland was not sentenced as a Habitual Felony Offender under § 13A-5-9, Ala. Code 1975. Thus, Strickland was not eligible for sentence reconsideration as provided in § 13A-5-9.1, Ala. Code 1975, because he was not "sentenced to life imprisonment without the possibility of parole pursuant to § 13A-5-9(c)(3) and had no prior Class A felony convictions or was sentenced to life imprisonment pursuant to § 13A-5-9(c)(2)" <u>Holt v. State</u>, [Ms. CR-04-1250, March 3, 2006]

---

[1] The record contains a motion to vacate, set aside or amend sentence that was filed on July 25, 2006. This motion is very similar to the June 14, 2006, motion. It was not ruled on by the trial court.

2

___ So. 2d ___, ___ (Ala. Crim. App. 2006). The trial court's denial of this motion on this ground is affirmed.

Strickland's claim that he is entitled to relief based on sentencing guidelines is without merit. Sentencing guidelines are found in § 12-25-1, et seq., Ala. Code 1975, and state:

> "Failure to follow any or all of the provisions of this section, or failure to follow any or all of the provisions of this section in the prescribed manner, shall not be reviewable on appeal or the basis of any other post-conviction relief."

§ 12-25-35(f), Ala. Code 1975.

Thus, the ruling of the trial court was correct, and it is hereby affirmed.

To the extent that we deciphered an equal protection claim in Strickland's motion, he has abandoned any such challenge on appeal.

Based on the foregoing, the trial court's denial of Strickland's request to be resentenced is affirmed.

AFFIRMED.

McMillan, P.J., and Baschab, Shaw, and Wise, JJ., concur.

4062

# Court of Criminal Appeals
State of Alabama
Judicial Building, 300 Dexter Avenue
P. O. Box 301555
Montgomery, AL 36130-1555

FRANCIS ALLEN LONG, SR.
Presiding Judge
H. WARD McMILLAN
SUE BELL COBB
PAMELA W. BASCHAB
JAMES H. FRY
Judges



Clerk's Office
(334) 242-4590

## MEMORANDUM

CR-98-1213                                   Elmore Circuit Court No. CC98-262.60

Daniel Strickland v. State

**Affirmed by memorandum.** Daniel Strickland was convicted of three counts of rape in the first degree, violations of § 13A-6-61(a)(1), Ala. Code 1975, three counts of sodomy in the first degree, violations of § 13A-6-63(a)(1), Ala. Code 1975, and three counts of sexual abuse in the first degree, violations of § 13A-6-66(a)(1), Ala. Code 1975. He was sentenced to 25 years' imprisonment for each first-degree rape conviction; these sentences are to run concurrently. In addition, he was sentenced to 10 years' imprisonment for each first-degree sodomy conviction; these sentences are to run concurrently with one another and consecutively to his sentences for rape. Further he was sentenced to 3 years' imprisonment for each first-degree sexual abuse conviction; these sentences are to run concurrently to one another and consecutively to his other sentences. Strickland was also ordered to pay court costs and $750 to the victim's compensation fund.

On appeal, Strickland contends (1) that the State failed to present evidence sufficient to show forcible compulsion and (2) that the trial court erred when it exempted the victim's mother from the invocation of Rule 615, Ala.R.Evid.

### Facts
The State presented the following evidence. Strickland was charged with nine sex crimes as the result of his contact with S.G.T., a minor. Strickland was the former live-in boyfriend of S.G.T.'s mother, and his sexual relations with S.G.T. began when she was 10 years old. (R. 13-17.) He was charged on the basis of the following episodes. On January


STATE'S EXHIBIT
B

22, 1997, Strickland took S.G.T. and her sister out to dinner for their birthdays. Following dinner, he drove S.G.T.'s sister home but took S.G.T. with him to the Smokehouse Restaurant, where he worked, so that he could allegedly check some meat. While they were at the restaurant, Strickland guided S.G.T. to a back table, removed S.G.T.'s clothing, and rubbed her breasts and her vagina. S.G.T. began to cry and asked him to stop. Strickland then placed his mouth on her vagina and stuck the tip of his penis in her vagina. Strickland ejaculated on her stomach. (R. 18-23.) During these events, Strickland was holding her down, even though she was kicking him. (R. 104-05.) On September 3, 1997, Strickland picked S.G.T. up in his truck to take her to an orthodontist appointment, but before he took her to her appointment, Strickland drove her to a junk pile adjacent to Old Farm Road. Strickland stopped his truck, got out, went to the passenger side of the truck, and laid S.G.T. down on her back inside the truck. Strickland removed all of S.G.T.'s clothing, except for her socks, fondled her breasts and her vagina, placed his mouth on her vagina, and put the tip of his penis inside her vagina. (R. 24-26.) S.G.T. tried to push him off of her with her legs. She succeeded once, but Strickland "got back on" her. (R. 107-08.) On another occasion, Strickland drove S.G.T. to some woods in Millbrook. S.G.T. thought that Strickland was driving her to Speigner Lake. Again, Strickland laid her down in the front seat of his truck, removed her clothes, and began fondling her. He was rubbing her vagina with both his hands and his mouth. He placed his penis inside her vagina. During this incident, he was holding her down, despite her crying and pleas to stop. (R. 30-31, 106.) Dr. Penny White, a pediatrician who performed S.G.T.'s gynecological evaluation testified that in her opinion, S.G.T. had experienced sexual abuse because of a tear in her hymen in conjunction with what she described to Dr. White. (R. 112-25.) Laurie Mattson served as S.G.T.'s therapist and testified that S.G.T. was withdrawn and experienced periods of low self-esteem when she began counseling. S.G.T. told Mattson that she was very confused because she loved Strickland and felt as though she had betrayed her mother. (R. 126-45.) S.G.T.'s stories were consistent throughout her visits with Mattson. S.G.T. told Mattson of more than four instances of abuse in more than one county. (R. 207-13.)[1]

    She testified that she continued to go places with Strickland because he would assure her that he would not touch her again. A typical encounter with Strickland would last approximately 30 minutes. He never wore a condom, and he always ejaculated on her stomach. (R. 32.) S.G.T. testified that Strickland had a scar on the left side of his penis. (R. 32-36.) A photograph of this scar was admitted into evidence. S.G.T. also testified that on other occasions, Strickland had used inanimate objects inside her, including a vibrator and a carrot. (R. 174, 176.) She further testified that Strickland had sexual contact with her more than 50 times and possibly more than 100 times. (R. 175.) S.G.T. never used tampons during her menstrual cycle. (R. 179.) After Strickland and her mother ended their relationship and married other people, S.G.T. told her sister about the abuse. Before this, S.G.T. was scared to tell anyone. (R. 23, 29.) She called Strickland "daddy." (R. 39.)

---

[1] S.G.T. testified that on yet another occasion, Strickland carried S.G.T. to her mother's bedroom, removed her clothing, and began fondling her breasts and her vagina. On this day, Strickland also placed his penis in S.G.T.'s vagina. (R. 27-29) This was not one of the episodes for which Strickland was charged.

S.G.T. identified Strickland in court. (R. 36.)

S.G.T.'s sister, B.N.T., testified that S.G.T. told her of the abuse. B.N.T. told a school counselor and their mother. (R. 45-49.) K.L.N., S.G.T.'s mother, testified that when S.G.T. returned home from being with Strickland, she acted sad and withdrawn. In addition, S.G.T.'s grades in school fluctuated. (R. 49-65.) Officer James Evans, a police officer with the Millbrook police department, interviewed S.G.T. and her mother about S.G.T.'s encounters with Strickland. (R. 66-73.) Sergeant Daryle L. Mangrum with the Prattville Police Department conducted a joint investigation with Officer Evans, and he also interviewed both S.G.T. and her mother. S.G.T. identified the locations of the incidents to Officer Evans, and she directed Sergeant Mangrum to the junk pile. He testified that this location was not a normal hangout for kids. In addition, Sergeant Mangrum interviewed Strickland. (R. 74-87.) Officer Evans testified that in the interviews, S.G.T.'s stories were consistent; she informed him that the activities had occurred at least 50 times and maybe more than 100 times. (R. 196.) He further testified that the reason Strickland was charged with only nine counts was based on jurisdictional considerations and S.G.T.'s uncertainty about the dates of the other incidents. (R. 197-200.) S.G.T. also told Officer Evans that when Strickland stuck his penis in her vagina, she would bleed. (R. 201.)

Strickland presented the following evidence in his defense. Walter McMillan, Strickland's friend and roommate, testified that he had never observed Strickland acting inappropriately with S.G.T. He also testified that he referred to Strickland as "one nut" in front of S.G.T. because Strickland had had one of his testicles removed. (R. 148-57.) Strickland's ex-wife, Nicole Cantrell, also testified that she never noticed anything unusual about Strickland's behavior with S.G.T. (R. 158-64.) Joyce Strickland, Strickland's mother testified that Strickland acted as a father to S.G.T. and her siblings. He provided financial support to the children after his break-up with S.G.T.'s mother. (R. 186-94.)

I.

At the close of the State's evidence, Strickland made a motion for a judgment of acquittal based on the State's alleged failure to prove the element of forcible compulsion. The trial judge denied this motion. (R. 147.) Before the trial judge delivered his instructions to the jury, he asked if Strickland would like to renew his motion. Strickland renewed his motion, stating again that the State had not produced evidence sufficient to show forcible compulsion. The trial judge found that the State had produced evidence sufficient to submit the question of forcible compulsion to the jury and that the State had "set forth a prima facie case sufficient to allow the case in total to go to the jury." (R. 215.) On appeal, Strickland raises the same argument.

In reviewing a trial court's denial of a motion for a judgment of acquittal, we must determine "'whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty.'" Frasier v. State, [Ms. CR-97-1953, December 18, 1998] ___ So.2d ___, ___ (Ala.Cr.App. 1998) (quoting Burell v. State, 680 So.2d 975, 978 (Ala.Cr.App. 1996)). This court must determine whether the legal evidence before the jury was such that the jury could have found that Strickland accomplished these acts through forcible compulsion beyond a reasonable doubt. See id. We will view the evidence in a light that is most favorable to the State, allowing all legitimate inferences therefrom. See Faircloth v. State, 471 So.2d 607 (Ala.Cr.App. 1985).

Strickland was charged in his indictment with three counts of rape in the first degree,

three counts of sodomy in the first degree, and three counts of sexual abuse in the first degree. He was charged with committing each offense through forcible compulsion. (C. 6-8.); see, also, § 13A-6-61(a)(1), § 13A-6-63(a)(1), and § 13A-6-66(a)(1), Ala. Code 1975. It appears from the record that even though the sexual abuse began when S.G.T. was 10 years old, the charged acts occurred when S.G.T. was 13 or 14 years old.[2]

Forcible compulsion is defined as "[p]hysical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person." § 13A-6-60(8), Ala. Code 1975; see, also, Rhodes v. State, 651 So.2d 1122, 1123 (Ala.Cr.App. 1994). The force required to constitute a crime against an adult is not required in a case in which the alleged victim is a child. See Howell v. State, 636 So.2d 1260, 1263 (Ala. 1993); Powe v. State, 597 So.2d 721, 724 (Ala. 1991); and Lee v. State, 586 So.2d 264, 266 (Ala.Cr.App. 1991). "[T]he element of forcible compulsion [can] be established by the relationship of a child victim with the defendant charged with the crime." Howell, 636 So.2d at 1261. In addition, forcible compulsion can be achieved through physical force and moral, psychological, or intellectual force. See id. A review of the record indicates that the State sufficiently demonstrated that Strickland committed his sexual acts with S.G.T. through forcible compulsion by using physical force and because of his parental relationship with S.G.T.

The State presented abundant evidence showing that Strickland forcefully compelled S.G.T. to participate in the acts by exerting physical force over her. During the incident at the restaurant, S.G.T. testified that Strickland was holding her down, while he was fondling her and having vaginal and oral intercourse with her. He continued to hold her down, even though S.G.T. was kicking him. S.G.T. testified that during the episode at the junk pile, wherein Strickland performed the same sexual acts, she was trying to push Strickland off of her with her legs. She succeeded in removing him once, but he "got back on her." During the incidents in the woods, Strickland was again holding her down while he performed oral and vaginal intercourse on S.G.T. and while he fondled her breasts and vagina. She was crying and begging him to stop. S.G.T. testified that she would bleed when his penis was in her vagina. Thus, the State presented sufficient evidence from which the jury could have concluded that Strickland used physical force to compel S.G.T. to participate in the sexual acts.

In addition, the State satisfied the element of forcible compulsion by proving that Strickland had a parental relationship with S.G.T. Strickland and S.G.T. had a special relationship. See Howell, supra. S.G.T. referred to Strickland as "daddy." Strickland's mother even testified that Strickland was like a father to S.G.T. S.G.T. trusted Strickland and believed him when he assured her that he would not perform these acts on her again. Because of this assurance and her loyalty to him and her mother, S.G.T. was scared to tell anyone of the abuse. The jury could have reasonably concluded from this evidence that because of the nature of Strickland's parental relationship with S.G.T., Strickland forcefully compelled S.G.T. to participate in the sexual conduct. The trial judge properly denied Strickland's motion for a judgment of acquittal.

---

[2] S.G.T. was 15 years old when she testified on October 5, 1998. (R. 13.) The charged acts occurred in 1997.

II.

Strickland argues that the trial judge erred when he exempted S.G.T.'s mother from the operation of Rule 615, Ala.R.Evid. Before trial, the State requested that the trial judge invoke Rule 615 by excluding the witnesses from the courtroom, except for S.G.T.'s mother and two law enforcement officers. Strickland contested this request, arguing that S.G.T.'s mother, a witness in the trial, should also be excluded from the courtroom. The trial judge allowed the mother and one of the officers to remain in the courtroom during the trial. On appeal, Strickland contends that it was improper for the trial judge to allow S.G.T.'s mother to stay.

Rule 615, Ala.R.Evid., provides:

> "At the request of a party the court *may* order witnesses excluded so that they cannot hear the testimony of other witnesses and it *may* make the order of its own motion. This rule does not authorize the exclusion of (1) a party who is a natural person, (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) a victim of a criminal offense of the representative of a victim who is unable to attend, when the representative has been selected by the victim, the victim's guardian, or the victim's family." (Emphasis Added).

The practice for which the rule provides is commonly referred to as the "sequestration of witnesses" or "putting witnesses under the rule." See Rule 615, Ala.R.Evid., Advisory Committee's Notes. "'Where the rule for the exclusion of witnesses from the courtroom is invoked, it is within the sound discretion of the trial court to allow any one of the witnesses to remain in the courtroom during the examination of the others.'" Jackson v. State, 502 So.2d 858, 863 (Ala.Cr.App. 1987); see, also, Camp v. General Motors Corporation, 454 So.2d 958, 959 (Ala. 1984) (stating that "excusing witnesses from the rule is a matter left largely to the discretion of the trial judge").

The trial judge did not abuse his discretion when he allowed S.G.T.'s mother to remain in the courtroom throughout the trial. It is clear from the record that the trial judge excused S.G.T.'s mother from the rule because S.G.T. was her minor child. S.G.T. needed her mother's support. It was within the trial judge's discretion to make this determination.

For the above-mentioned reasons, the judgment of the Circuit Court of Elmore County is due to be, and is hereby, affirmed.

Long, P.J., and McMillan, Cobb, Baschab, and Fry, JJ., concur.

778 So.2d 877 (Table)

(The decision of the Court is referenced in the Southern Reporter in a table captioned 'Decisions of the Alabama Court of Criminal Appeals Without Published Opinions'.)

Court of Criminal Appeals of Alabama.
**Daniel Strickland**
v.
State
CR-98-1213
July 09, 1999

Affirmed
Reh. denied.

Ala.Cr.App. 1999.
**Daniel Strickland** v. State
778 So.2d 877 (Table)

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.



STATE'S EXHIBIT C

Westlaw.

780 So.2d 815 (Table)  Page 1

780 So.2d 815 (Table)
**(Cite as: 780 So.2d 815 (Table))**

**H**
Ex parte Strickland
Ala. 1999.
(The decision of the Court is referenced in the Southern Reporter in a table captioned 'Decisions of the Supreme Court of Alabama Without Published Opinions'.)
Supreme Court of Alabama.
Ex parte **Daniel Strickland**
NO. 1981985

October 22, 1999

Disposition: Certiorari denied.

Ala. 1999.
Ex parte Strickland
780 So.2d 815 (Table)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



STATE'S EXHIBIT D